ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| DSME Construction Co., Ltd. | ) | ASBCA No. 63878 |
| | ) | |
| Under Contract No. W91QVN-23-D-0038 | ) | |

APPEARANCE FOR THE APPELLANT:     Yong Eui Song, Esq.
                                                                  Central IP & Law
                                                                  Seoul, Korea

APPEARANCES FOR THE GOVERNMENT:     Dana J. Chase, Esq.
                                                                       Army Chief Trial Attorney
                                                                       LTC Bruce A. Nessler, JA
                                                                       CPT Natalie W. McKiernan, JA
                                                                       MAJ Katharine M. Calderon, JA
                                                                       Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

The parties contracted for appellant, DSME Construction Co., Ltd., to provide maintenance and repair services at Camp Humphries and Camp Yongin, in the Republic of Korea. The contracting officer terminated the contract for default. A month later, rather than appealing to this Board from the termination for default, DSME presented to the contracting officer a claim for (1) conversion of the termination to one for the convenience of the government, and (2) payment of approximately $2 million, including an amount for work performed prior to the termination. Ninety-seven days after the termination of the contract for default, the contracting officer denied DSME's claim for conversion and money. DSME appeals from that decision. Among the government's positions is its affirmative defense that the contract is void *ab initio*, for fraud and material misrepresentation.[1] The parties elected to proceed without a live hearing, pursuant to Board Rule 11.[2]

---

[1] Amend. ans. at 102-03.

[2] We have not considered DSME's surreply in arriving at this opinion, as a sanction in response to the preparation of that brief. *DSME Constr. Co., Ltd.*, ASBCA No. 63878, 26-1 BCA ¶ 39,026 at 190,053.

FINDINGS OF FACT

The parties entered the contract on April 13, 2023, for DSME to "[p]rovide preventive maintenance in the critical facilities and dining facilities at Camp Humphreys and Camp Yongin [in accordance with the Performance Work Statement (PWS)], for 3,358,244,779 South Korean Won (KRW) ($2,270,495.86),"[3] through a base period ending December 31, 2023.[4] The contract incorporates by reference Federal Acquisition Regulation (FAR) 52.212-4, Contract Terms and Conditions - Commercial Products and Commercial Services (NOV 2021), which provides at paragraph (m), Termination for cause:

> The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions . . . . [5]

FAR 52.212-4 further provides, at paragraph (f), Excusable delays:

> The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence . . . .

According to ¶¶ 1.0 and 1.1 of the PWS, the government needed an "enhanced maintenance program in the specific areas of heating, ventilating, and air-conditioning (HVAC) system, electrical systems, and built-in food service equipment of [] selected buildings," and the contractor was to "provide all personnel, equipment, supplies, facilities, transportation, tools, materials, supervision, and other items and non-personal services necessary to provide maintenance and repair services for thirty-three (33) critical facilities" at the two camps.[6] The government says that the contract's "full performance period" began on July 1, 2023;[7] DSME says that "contract commencement" began on July 3, 2023.[8]

The PWS provides, in ¶ 9.2.2, Cooling Towers, that "[d]ue to absence of necessary water treatment system of the supply water flowing into the cooling towers, the Contractor shall . . . remove sludge on . . . inside/outside of the cooling towers

---

[3] As of April 16, 2026.
[4] *See* R4, tab 1 at 1-3 (alteration added).
[5] R4, tab 1 at 23 (emphasis added).
[6] R4, tab 1a at 1-2.
[7] Gov't br. at 2.
[8] App. br. at 5.

*every other week* or more frequently."[9]  Ultimately, DSME was responsible for removing sludge at that rate from 29 cooling towers.[10]  However, DSME performed sludge removal only three times:  once each from only three cooling towers.[11]

On May 8, 2023, the parties modified the contract to require that DSME inventory all equipment and submit an inventory report to the government no later than 70 days (from an original 85 days) "once Phase-In is started."[12]  We find that the phase-in period started on April 13, 2023, when the contract was awarded, and ended 70 days later, on June 22, 2023.[13]  On August 8, 2023, the government issued a stop work order, effective August 9, 2023.[14]  DSME did not provide a complete inventory until August 31, 2023.[15]

On October 17, 2023, the contracting officer terminated the contract for default.[16]  Among the reasons that the contracting officer identified for the termination of the contract are that DSME had not timely provided an accurate inventory list, and had not adequately removed sludge from cooling towers.[17]

On November 16, 2023, DSME submitted to the contracting officer a certified claim asserting that "the government wrongfully and improperly terminated the Contract," and requesting conversion of the termination to one for the convenience of the government and payment of 3,050,892,883 KRW ($2,062,696.47),[18] "for the work DSME performed prior to the termination and loss and damages incurred by DSME thereafter due to the wrongful and improper termination."[19]  On January 22, 2024, the contracting officer issued a decision stating that:

---

[9] R4, tab 1a at 42 § 9.2.2 (emphasis added).

[10] Gov't br. at 18 ¶ 39; app. br. at 23-24 ¶ 81.

[11] Gov't br. at 18 ¶ 39; *see* app. br. at 14-15 ¶¶ 37-39.

[12] *See* R4, tab 2 at 1-3.

[13] DSME agrees.  App. br. at 29 ¶ 102.  The government says that the phase-in period began on April 17, 2023, and ended on June 30, 2023.  Gov't br. at 10 ¶ 22, 33, 35.  That discrepancy is immaterial, because DSME did not provide a complete inventory until August 31, 2023.  App br. at 24-25 ¶¶ 84, 86.

[14] R4, tab 4; gov't br. at 23 ¶ 57; app. br. at 5 ¶ 4.

[15] App br. at 24-25 ¶¶ 84, 86.

[16] R4, tabs 5b, 5c.

[17] *See* R4, tab 5c at 1, 4.

[18] As of April 16, 2026.

[19] R4, tab 56 at 2-3, 201, 203, tab 56zn.  In its complaint at page 1, DSME alleges that it "made the claim" on November 16, 2023.  At page 3 of its answer, the government alleges that the contracting officer received the "complete claim" on November 20, 2023, citing page 1 of the contracting officer's decision.  But the contracting officer's decision states that DSME's claim is "*dated*

3

the Contracting Officer has determined not to convert the termination from [a termination for default] to [a termination for convenience]. The Government will pay for performance provided by DSME from 17 April 2023 thru 8 August 2023 (the stop work order date) [in accordance with] the contract. The contracting officer has repeatedly requested an invoice based on this amount and does not recognize the amount as part of this claim, as it has not been properly invoiced as of this time.[20]

DSME noticed this appeal 85 days later, on April 16, 2024.

## DECISION

### I. Jurisdiction

Given that the contracting officer's January 22, 2024 decision was issued seven days after the expiration of the 90-day period within which DSME could have timely appealed the contracting officer's October 17, 2023 termination of the contract for default, we invited the parties to brief the issue of our jurisdiction. DSME says that we possess jurisdiction; the government disagrees. We find jurisdiction to entertain the appeal.

While receipt by a contracting officer of a contractor's request for reconsideration of a contracting officer's final decision does not vacate such a decision, a contracting officer's reconsideration of such a decision does. *See Royal Int'l Builders Co.*, ASBCA No. 42637, 92-1 BCA ¶ 24,684 at 123,135; *see also Guardian Angels Med. Serv. Dogs, Inc. v. United States*, 809 F.3d 1244, 1249-51 (Fed. Cir. 2016). Although the contracting officer's January 22, 2024 decision ultimately rejects DSME's asserted excuses for its default, by entertaining DSME's November 2023 claim for conversion of the October 2023 default termination to one for the convenience of the government along with the associated alleged monetary damages, that January 22, 2024 decision effectively reconsiders the October 2023 decision to base the termination of the contract upon the determination that DMSE had defaulted upon its contractual obligations. In addition, the January 22, 2024 decision acknowledges that the government owes DSME an unspecified amount for performance, but only for the period April 17 through August 8, 2023. This appeal challenges those determinations.

_____

20 November 2023," even though DSME's claim is dated November 16, 2023. R4, tab 6 at 1 (emphasis added), tab 56 at 1, 203. We find that the contracting officer received DSME's claim on November 16, 2023.

[20] R4, tab 6 at 13 (alterations added).

4

Because DSME timely appealed from the contracting officer's January 22, 2024 decision, we possess jurisdiction to entertain this appeal.

### II. Equipment Inventory

DSME was to have inventoried all equipment, and submitted a report of that inventory to the government, no later than June 22, 2023. However, DSME admits that it did not submit what it describes as an "accurate inventory list" until August 31, 2023.[21] Because DSME failed to inventory all equipment and submit a report of such inventory no later than June 22, 2023, DSME defaulted.

Now it's up to DSME to demonstrate that its default is excused. *See HK&S Constr. Holding Corp.*, ASBCA No. 60164, 19-1 BCA ¶ 37,268 at 181,352. DSME offers several excuses: that the government did not provide an inventory list until April 26, 2023; that the government-provided inventory list was inaccurate; that the government impeded access to at least some buildings; and that the government did not respond to DSME's June 7, 2023 inventory list.[22] We are unpersuaded. DSME does not demonstrate that the contract required the government to help DSME conduct an inventory of all equipment and submit a report of that inventory; nor does DSME support with any evidence its contention that the government impeded its access to buildings, and "simply saying it does not make it so." *ECC Int'l LLC*, ASBCA Nos. 61176, 62029, 21-1 BCA ¶ 37,824 at 183,692. For these reasons, we conclude that DSME's failure to inventory all equipment and submit an inventory report to the government no later than 70 days after the contract's phase-in period started is not excused.

### III. Removal of Sludge from Cooling Towers

Section 9.2.2 of the PWS requires that the contractor "remove sludge on . . . inside/outside of the cooling towers every other week or more frequently."[23] With the removal of some buildings from the scope of work, DSME was ultimately responsible for removing sludge, at least twice per month, from 29 cooling towers.[24] However, DSME removed sludge from only three cooling towers, and only once from each.[25] That constitutes a default.

---

[21] *See* app. br. at 24-26, 29 ¶ 106, 31 ¶ 115; app. reply br. at 25.

[22] *See* app. br. at 24-35; app. reply br. at 24-26.

[23] R4, tab 1a at 42.

[24] Gov't br. at 18 ¶ 39; app. br. at 23-24 ¶ 81.

[25] Gov't br. at 18 ¶ 39; *see* app. br. at 14-15 ¶¶ 37-39. DSME says that it removed sludge "from three cooling towers in Building 6100," in response, not to a call for preventative maintenance pursuant to ¶ 9.2.2 of the PWS, but to "an urgent

By way of excuse, DSME says that it "had great difficulty in removing sludge" from those three cooling towers, because, pointing to ¶ 9.1.1 of the PWS, "the government did not provide the cooling tower Manuals."[26] Paragraph 9.1.10, Preventive Maintenance (PM), provides that:

> The Preventive Maintenance consists primarily of inspection, cleaning, lubrication, adjustment, calibration, operation, on-call minor repair services and component replacement for minor repair as required minimizing malfunction, breakdown, and deterioration of equipment. *The PMs shall be performed as specified in manufacture's maintenance manual or recommendation.*[27]

However, paragraph 9.1.10 does not state that the government must provide maintenance manuals; moreover, paragraph 9.1.5 of the PWS required DSME to "maintain [Operation and Maintenance] Manuals, at an on-site location,"[28] and, as the government points out,[29] paragraph 9.9 of the PWS required DSME to "update manufacture's manual for preventive maintenance tasks for all equipment in the contract during the base year," and to "submit the updated manufacture's (sic) manual [to the government] by 5th day (sic) of every month."[30] Finally, ¶ 1.0 of the PWS required DSME to provide all equipment, supplies, tools, materials, and other items necessary to provide maintenance and repair services at the two camps.[31] Those provisions indicate that DSME was responsible for obtaining manuals, and do not indicate that the government was required to provide manuals to DSME. Consequently, DSME's obligation to perform sludge removal in cooling towers was not dependent upon the government providing "a manufacturer's maintenance manual or recommendation."

DSME also says that "the three cooling towers were not chemically treated as required in paragraph 9.2.24 of [the] PWS within the six (6) months preceding July 1, 2023," which DSME says resulted in sludge hardening.[32] Indeed, as DSME points out, the government admitted in discovery that none of the cooling towers was

---

call for service and repair" pursuant to ¶¶ 9.1.1 and 9.1.2.3. App. br. at 15 ¶¶ 38-41.

[26] App. br. at 14 ¶ 37.

[27] R4, tab 1a at 37 (emphasis added).

[28] R4, tab 1a at 35 (alteration added).

[29] Gov't reply at 3 ¶ 5.

[30] R4, tab 1a at 65.

[31] R4, tab 1a at 1-2.

[32] App. br. at 14 (alteration added).

chemically treated "as required in paragraph 9.2.24."[33]  However, we take DSME's statement that it removed sludge from three cooling towers as an admission that it was able to remove sludge from cooling towers not only without a government-provided manual, but without the cooling towers having been previously chemically treated to address sludge hardening.  We further note that DSME does not demonstrate that it could have removed sludge three times from all 29 cooling towers at least every other week during the month spanning July 3 through August 3, 2020, if only the government had provided manuals and the cooling towers had been pre-treated.  Indeed, DSME does not even say how long it took to remove sludge from the three cooling towers from which it removed sludge.  Nor does DSME point to any record evidence of the sludge hardening that it says it encountered, or say that it inspected the 26 cooling towers from which it did not remove sludge and discovered the same sludge hardening that it claims it discovered in the three cooling towers from which it did remove sludge.  For these reasons, we conclude that DMSE's failure to remove sludge from cooling towers at the rate required by the contract is not excused.

### IV.  Payment for Work Performed

DSME claims 2,090,097,537 KRW for work performed, pointing to two spreadsheets that appear to reflect expenses incurred from April through October 2023.[34]  DSME also says that "[t]he government acknowledged . . . that it owed [DSME] 79,528,329 [KRW] for the work performed from August 1 to August 8, 2023";  that is, through the date that the government issued the stop work order.[35]  The government replies that it "has already paid appellant the full firm-fixed price for each month of phase-in (April through June 2023), as well as for all CLINs for the month of July 2023,"[36] and that it owes DSME 97,174,240 KRW[37] "for full performance [of certain contract line items] from August 1, 2023 to August 8, 2023," but that, "[a]s of May 29, 2025, [DSME] had not submitted an invoice to be paid for [that period]."[38]  Again, we have not considered DSME's surreply in arriving at this opinion.  Finding that the government's statement is unrebutted, and that it includes an admission against the government's interest that it owes DSME 97,174,240 KRW amount for work performed from August 1 to 8, 2023, we award DSME that amount.  The government provides no authority for its apparent position that DSME should not be awarded that amount because DSME did not invoice that amount.  The government also urges that interest not be awarded upon this amount, but, as the government also notes, quoting and citing 41 U.S.C. § 7109(a)(1), "[i]nterest on an amount found due

---

[33] App. br. at 18; app. supp. R4, tab 109 at 7-8.
[34] App. br. at 51, 54 (citing app. supp. R4, tabs 106-07).
[35] App. br. at 52 ¶ 197 (alterations added); R4, tab 4.
[36] Gov't reply at 41-42.
[37] $65,699.11, as of April 16, 2026.
[38] Gov't reply at 5 ¶ 9 (alterations added).

to a contractor on a claim shall be paid to the contractor for the period beginning with the date the contracting officer receives the contractor's claim";[39] consequently, interest will be paid. The government does not say that the 97,174,240 KRW that it owes DSME for work performed in August 2023 is not included in DSME's November 16, 2023 claim to the contracting officer; indeed, that claim includes a spreadsheet requesting 375,036,587 KRW for August 2023.[40]

## CONCLUSION

We have considered the parties' other positions, including the government's affirmative defense that the contract is void *ab initio*, and find them unnecessary to address because we are denying the appeal except as to amounts that the government does not dispute that it owes. Accordingly, the appeal is sustained in the amount of 97,174,240 KRW, with interest under 41 U.S.C. § 7109, from November 16, 2023— the date that the contracting officer received appellant's certified claim—and is otherwise denied.

Dated: April 17, 2026

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[39] Gov't reply at 42.
[40] R4, tab 56 at 201.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63878, Appeal of DSME Construction Co., Ltd., rendered in conformance with the Board's Charter.

Dated: April 20, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals